United States District Court
Southern District of Texas
**ENTERED**
September 19, 2019
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JILL HILL, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-18-4669 |
| | § | |
| INTERNATIONAL ASSOCIATION OF MACHINERY AND AEROSPACE WORKERS, AFL-CIO, *et al*., and UNITED AIRLINES, INC. | § § § § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is United Airlines, Inc.'s ("United") motion to dismiss plaintiff Jill Hill's ("Hill") amended complaint (Dkt. 16) ("Complaint"). Dkt. 24. Hill responded. Dkt. 27. Defendant International Association of Machinists and Aerospace Workers, AFL-CIO ("IAMAW") separately answered Hill's Complaint, in which it also requests dismissal of Hill's claims.[1] Dkt. 22. Having considered the motions, response, reply, sur-reply,[2] and applicable law, the court is of the

---

[1] Generally to be considered a motion, "a request for a court order must . . . state with particularity the grounds for seeking the order." Fed. R. Civ. P. 7(b)(1)(B). IAMAW's answer asserts that a dismissal order is appropriate because Hill fails to state a claim, but IAMAW does not provide any particulars to support its position. Dkt. 22 at 12. However as explained further below, Hill's claims against IAMAW and United are "inextricably interdependent." *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65, 103 S. Ct. 2281 (1983). As such, United's briefing appropriately provides the particulars upon which such an order may be grounded, and more importantly, Hill is aware of and has responded to these arguments. The court therefore construes IAMAW's answer as a motion to dismiss. *See Schiavone v. Fortune*, 477 U.S. 21, 27, 106 S. Ct. 2379 (1986) ("'All pleadings shall be construed as to do substantial justice.' . . . [D]ecisions on the merits are not to be avoided on the bases of mere technicalities.") (quoting Fed. R. Civ. P. 8(f)(1986)); *see also Pennington v. Athens Hotel*, No. 15-cv-2216, 2016 WL 7103909, at *2 n.10 (S.D. Tex. Dec. 6, 2016) (Atlas, J.) (noting the court previously construed defendant's answer as a motion to dismiss).

[2] Because United raises a novel statute of limitations argument in its reply, the court GRANTS Hill's motion to file a sur-reply (Dkt. 30) for the limited purpose of responding to this argument. *See Branch v. CEMEX, Inc.*, 2012 WL 2357280, at *9 (S.D. Tex. June 20, 2012) (Rosenthal, J.) ("A surreply, when allowed, is limited to addressing only new arguments raised for

opinion that United's and IAMAW's motions (Dkts. 22, 24) should be GRANTED.

## I. BACKGROUND

This dispute arises from United's termination of Hill's employment after twenty-three years of service. Dkt. 16 at 3. A collective bargaining agreement between United and IAMAW (the "CBA") governed Hill's employment relationship with United at all relevant times. *Id.* at 1-2, 20; Dkt. 11-1 at 17-148.[3] The CBA is in turn subject to the requirements of the Railway Labor Act ("RLA"). Dkt. 11-1 at 17; 45 U.S.C. §§ 181-88.

On October 17, 2017, United asked Hill to meet with a Corporate Security investigator during her regularly scheduled work hours (the "Interview"). Dkt. 16 at 13-14. Before commencing the Interview, United asked if Hill would like union representation present at the meeting and arranged for an IAMAW representative to attend the entire Interview. *Id.* at 14. Corporate Security presented Hill with the names of several individuals during the Interview and requested Hill disclose her relationship to those listed. *Id.*; Dkt. 11-1 at 4. Hill provided the requested information and admitted to changing tickets in violation of United's Waivers and Favors Policy. Dkt. 11-1 at 4. At the conclusion of the Interview, United confiscated Hill's United ID and her company issued hand held device. Dkt. 16 at 15.

Hill alleges that United twice violated the CBA in connection with this Interview. According

---

the first time by the opposing party in their reply briefing and not included in the original motion.").

[3] United asks the court to consider the exhibits attached to its brief in support of its prior motion to dismiss Hill's original complaint (Dkt. 11) when deciding its current motion. Dkt. 26. Hill agrees that the CBA, which is included as part of United's exhibits (Dkt. 11-1), is rightfully considered as applicable to her Complaint. Dkt. 28. The court can properly consider documents proffered by a defendant that are "referenced in the complaint and are central to the plaintiff's claims." *See Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019). The court shall consider United's exhibits to the extent Hill referenced the documents in her Complaint.

to Hill, United was required to provide advance written notice of the Interview and allow Hill an opportunity to consult with IAMAW prior to the Interview, but United did neither. *Id.* at 14-15. Hill raised her concerns with IAMAW and asked that IAMAW grieve United's alleged violations pursuant to the CBA. *Id.* at 3-4, 14-15. But, "[a]t no point before, during, or after" the Interview did IAMAW object to or grieve these alleged procedural violations. *Id.* at 14-15.

On November 1, 2017, United informed Hill it would be pursuing termination of her employment, and notified her of an investigatory review meeting ("IRM") scheduled for November 7, 2017. *Id.* at 4. Hill met with IAMAW in advance of the IRM and again protested United's alleged CBA violations. *Id.* at 4, 15. IAMAW stated that it wasn't "going to simply throw mud just to see what might stick," and counseled Hill to keep her comments "very limited" during the IRM. *Id.* IAMAW further advised Hill that "it's very difficult to get your job back in a Step 2. [Her] best chance for saving [her] job occurs during a Step 3." *Id.* at 5 (emphasis omitted). "However, Hill did reiterate the confluence of serious personal issues she was dealing with [and] her desire to provide excellent customer service in the wake of multiple public relations fiascos plaguing United." *Id.* IAMAW requested a "last chance agreement" during the IRM, but declined to press Hill's personal circumstances. *Id.*

United terminated Hill on December 7, 2017. *Id.* at 6. Hill subsequently contacted IAMAW, which assigned a representative to handle the Step 3 proceedings. *Id.* Hill was notified on March 8, 2018 that her Step 3 meeting would occur on March 19, 2018. *Id.* At the Step 3 meeting, IAMAW renewed its request for a last chance agreement and proffered Hill's mitigating personal circumstances as justification. *Id.* at 6-7. Hill's Step 3 meeting with United's representative lasted one hour and a half. *Id.* at 7. United upheld Hill's termination on April 23, 2018. *Id.* at 7. Hill alleges that four days later IAMAW informed her that United's Step 3 termination notice came nine days after the CBA imposed deadline. *Id.* On June 21, 2018, IAMAW declined to appeal Hill's

3

termination to arbitration. *Id.*

Hill filed suit against United and IAMAW on December 11, 2018. Dkt. 1. Hill alleges United breached the CBA when it terminated her because it (1) failed to establish "'just cause' under standards of disciplinary due process and other protections afforded Hill pursuant to the CBA;" and (2) provided its Step 3 termination notice after the CBA established deadline. Dkt. 16 at 1-2, 17, 24-26. Hill also alleges two breaches of IAMAW's duty of fair representation under the RLA. Specifically, Hill claims IAMAW breached its duty when it did not grieve United's failure to provide written notice and an opportunity to consult with IAMAW prior to the Interview. *Id.* at 21-24. Hill further alleges IAMAW generally denied her fair representation throughout the termination process because Hill's IAMAW dues payments were in arrears and she had publicly feuded with IAMAW regarding her dues payments. *Id.* at 7, 17-20.

## II. LEGAL STANDARD

Under Rule 12(b)(1), a party can seek dismissal of an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "In determining whether the court has subject matter jurisdiction, [it] must accept as true the allegations set forth in the complaint." *Crane v. Johnson*, 783 F.3d 244, 251 (5th Cir. 2015) "[A] trial court has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.*

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). "Rule 12(b)(6) authorizes the filing of motions to dismiss asserting, as a defense, a plaintiff's failure to state a claim upon which relief can be granted." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019). In considering a Rule 12(b)(6) motion to

4

dismiss, "the court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff." *Id.*

"[A] complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, [but] a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Twombly*, 550 U.S. at 555 (internal citations omitted) (quotations omitted). The factual allegations must be enough to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "[F]acial plausibility exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Inclusive Cmtys.*, 920 F.3d at 899 (quoting *Iqbal*, 556 U.S. at 678). "Factual allegations that are merely consistent with a defendant's liability, stop short of the line between possibility and plausibility of entitlement to relief, and thus are inadequate." *Id.* (internal quotations omitted).

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Id.* at 900. The court also can properly consider documents presented by the defendant that are referenced in the complaint and are central to the plaintiff's claims. *Id.* A complaint that shows relief to be barred by an affirmative defense, such as the statute of limitations, may be dismissed for failure to state a claim. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

### III. ANALYSIS

Hill's Complaint alleges both breach of the CBA by United and breach of the duty of fair representation under the RLA by IAMAW. Dkt. 16. United argues that the court lacks subject matter jurisdiction over Hill's breach of contract claim because Hill has failed to state a claim for breach of the duty of fair representation. Dkt. 25. IAMAW also moves for dismissal for Hill's failure to state a claim. Dkt. 22.

Typically, the National Railroad Adjustment Board has exclusive jurisdiction under the RLA to hear employee grievances against her employer involving interpretation or application of the CBA. *Trial v. Atchison, Topeka & Santa Fe Ry. Co.*, 896 F.2d 120, 123 (5th Cir. 1990). However, an employee may bring a "hybrid" action in the district court alleging claims against both the union and the employer when she has a dispute with the union for breach of the duty of fair representation and the employer involving interpretation of the CBA. *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir. 1992). The two claims in a hybrid action are "inextricably interdependent." *DelCostello v. Int'l Bhd.. of Teamsters*, 462 U.S. 151, 164, 103 S. Ct. 2281 (1983). "To prevail against either the company or the [u]nion, employee-plaintiffs must not only show that their discharge was contrary to the [CBA] but must also carry the burden of demonstrating a breach of duty by the [u]nion." *Id.* at 165 (internal quotations omitted).

Because Hill's claims against IAMAW underpin the court's jurisdiction to hear Hill's claims against United, whether Hill has alleged facts sufficient to state a claim against IAMAW will be considered first.

A. <u>Failure to State a Claim</u>

    1. *Statute of Limitations*

Claims for breach of the duty of fair representation are subject to a six-month statute of limitations, which begins to run when the employee "discover[s], or in the exercise of reasonable

diligence should discover, the acts that form the basis of their duty of fair representation claim." *Trial*, 892 F.2d at 124. Hill, in part, alleges IAMAW breached its duty of fair representation when it failed to grieve procedural defects in United's investigation—specifically, failing to give written notice of, and not allowing Hill to meet with IAMAW prior to, the Interview. Dkt. 16 at 21-24. To predicate her breach of the duty of fair representation claim on IAMAW's failure to grieve United's alleged violations, Hill must have filed suit within six months of knowing that IAMAW would not be filing a grievance.

The CBA provides that a "complaint must be lodged promptly after the disputed event occurs." Dkt. 11-1 at 117. To file a grievance, an employee "should first discuss the matter with his Supervisor," then if not resolved, the employee "may request a Steward to handle the matter." *Id.* at 118. "If the matter is still not resolved, within 30 days of when the employee first knew or should have known of the event giving rise to the dispute, the Steward *must* put the facts in writing . . . and give it to the Supervisor." *Id.* (emphasis added).

Hill first raised her procedural grievance with IAMAW sometime between the Interview on October 17, 2017 and the IRM on November 7, 2017. *Id.* at 4, 14-16 (stating Hill "again" raised these concerns with IAMAW in the "[d]ays prior to the IRM"). At that time, IAMAW allegedly told Hill that it would not "simply throw mud just to see what might stick." *Id.* at 16. United argues that this was sufficient notice to Hill that IAMAW would not grieve her complaint and the statute of limitations started to run shortly before the IRM. Dkt. 29 at 9. Hill responds that only when IAMAW informed her that it would not arbitrate her termination did the statute of limitations begin to run, because her internal remedies were not exhausted until that point. Dkt. 30-2 at 3-4.

Hill alleges United breached the CBA on October 17, 2017, when it did not provide written notice of the Interview and did not allow Hill to meet with IAMAW prior to questioning. Dkt. 16 at 21-24. The court need not decide whether IAMAW's mud throwing commentary was sufficient notice, because Hill nonetheless should have known IAMAW would not grieve her complaint 30 days after the Interview on November 16, 2017, when IAMAW had not provided United a written grievance as required under the CBA. Therefore, Hill had six months from November 16, 2017 to file suit against IAMAW for its failure to grieve United's alleged procedural defects. Hill filed her original complaint on December 11, 2018, more than a year after the CBA prescribed deadline for IAMAW to file a grievance.

In a similar fact situation, the Sixth Circuit determined that an employee should have known the union would not be filing a grievance when it failed to act within the deadline prescribed by the CBA. *Hollingsworth v. Ford Motor Co.*, 644 Fed. App'x 496, 501-02 (6th Cir. 2016). In *Hollingsworth*, the employee argued that the limitations period was tolled while the union was investigating the employer's conduct and only began to run when the union formally declined to file a grievance. *Id.* at 500-01. The Sixth Circuit reasoned that the employee should have known the union would not file a grievance when it "failed to act within the short deadline prescribed by the CBA," because "a union member is responsible for knowing the contents of his CBA." *Id.* at 502.

The court is persuaded by the Sixth Circuit's reasoning. Hill alleges knowledge of the CBA sufficient to complain about United's failure to provide written notice or consultation with IAMAW within days of the Interview. It follows that she should have been aware of the thirty day grievance deadline and should have known that IAMAW would not grieve her complaint when it had not done so by November 16, 2017. Because she did not file suit until more than one year later, Hill's claim that IAMAW's breached its duty of fair representation when it failed to grieve United's alleged

8

procedural violations is time-barred.

2. *Duty of Fair Representation*

Hill also alleges IAMAW breached its duty of fair representation because it did not prosecute her appeals with sufficient vigor or zeal, which Hill alleges was retaliation for her delinquent dues payments. Dkt. 16 at 17-24. To state a claim for breach of the duty of fair representation, an employee must allege facts that show the union's actions were arbitrary, discriminatory, or in bad faith. *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67, 111 S. Ct. 1127 (1991).[4] "A union's conduct is 'arbitrary only if, in light of the factual and legal landscape at the time of the union's activities, the union's behavior is so far outside the wide range of reasonableness as to be irrational.'" *Horner v. Am. Airlines, Inc.* 927 F.3d 340, 343 n.1 (5th Cir. 2019) (quoting *O'Neill*, 499 U.S. at 67). "Discrimination requires 'substantial evidence' that there was discrimination that was 'intentional, severe, and unrelated to legitimate union objectives.'" *Id.* at 343 n.2 (quoting *Motor Coach Emps. v. Lockridge*, 403 U.S. 274, 301, 91 S. Ct. 1909 (1971)). "Bad faith occurs when a union acts with a motive to harm a particular group, and turns on the subjective motivation of the union officials." *Carr v. Air Line Pilots Ass'n*, *Int'l*, 866 F.3d 597, 602 (5th Cir. 2017) (internal quotation omitted).

A union retains considerable discretion in processing the grievances of its members. *Landry v. The Cooper/T. Smith Stevedoring Co.*, 880 F.2d 846, 852 (5th Cir. 1989). The duty of fair

---

[4] Hill asserts that "[u]nder judicially-established national labor policy, a breach of the [duty of fair representation] occurs when a union's conduct toward a member of the collective bargaining unit is negligent, arbitrary, or perfunctory," but does not provide any authority to support this standard. Dkt. 16 at 21. The Fifth Circuit has held that a union does not breach its duty of fair representation through simple negligence or a mistake in judgment. *Landry v. The Cooper/T. Smith Stevedoring Co.*, 880 F.2d 846, 852 (5th Cir. 1989); *see also United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372-73, 110 S. Ct. 1904 (1990) (endorsing lower courts' view that mere negligence does not breach duty of fair representation). The court follows the precedents of the Supreme Circuit and Fifth Circuit, and declines to adopt Hill's standard.

representation is not breached "through simple negligence or a mistake in judgment." *Id.* The critical question is whether a union's conduct undermined the fairness or integrity of the grievance process. *Id.* Courts "must be highly deferential" when conducting any substantive review of a union's performance in handling an employee's grievance. *Air Line Pilots*, 499 U.S. at 78.

Hill has not pled sufficient facts to show IAMAW's conduct was arbitrary, discriminatory, or done in bad faith. First, Hill's allegations do not place IAMAW's actions "so far outside the wide range of reasonableness to be irrational." *O'Neill*, 499 U.S. at 67. Hill chiefly complains that IAMAW neither objected to United's questions nor sufficiently pursued progressive discipline at the Interview, the IRM, or the Step 3 meeting. Dkt. 16 at 21-24. Hill alleges that IAMAW breached its duty when it (1) did not object to United's questioning at the Interview; (2) did not present Hill's personal circumstances as justification for progressive discipline at the IRM; (3) used improper nomenclature when referring to phases of the grievance process. *Id.* at 2-5, 14-16, 21-24. But, Hill also alleges that IAMAW requested a last chance agreement, the final step of progressive discipline, at both the IRM and the Step 3 meeting and even asserted her personal circumstances at the Step 3 meeting. *Id.* at 5-7. IAMAW's conduct at the Interview and IRM may have been lackadaisical, but it did not cross into irrationality and therefore is not arbitrary.

Hill instead argues that IAMAW's conduct was negligent, but as a matter of law, negligence and poor judgment are insufficient to show a breach of the duty of fair representation. *Landry*, 880 F.2d 852. Further, "[a]n employee has no absolute right to have his grievance taken to arbitration," *Landry*, 880 F.2d 852, so Hill cannot rely on this allegation to state a claim for breach of the duty of fair representation either.

Second, Hill does not allege any facts showing IAMAW discriminated against her during the termination representation. At most, Hill suggests IAMAW pursued progressive discipline for

10

other employees with greater intensity. Dkt. 16 at 6, 26. But these intimations fall far short of plausibly demonstrating discrimination that was "intentional, severe, and unrelated to legitimate union objectives." *Motor Coach Emps.*, 403 U.S. at 301.

Finally, Hill alleges IAMAW prosecuted her termination grievance in bad faith because she publicly feuded with IAMAW when confronted about her late dues payments. Dkt. 16 at 10 ,17. Hill again fails to plead facts necessary to show a breach of IAMAW's duty of fair representation. "[A] motive to harm a particular group," is sufficient to show bad faith, but this "turns on the subjective motivations of the union officials," which Hill has not alleged. *Carr*, 866 F.3d at 602. Her only allegations are that a few weeks before the Interview an IAMAW representative—who played no part in the subsequent termination proceedings—"rudely and aggressively questioned her dues non-payment," while Hill operated a passenger flight bridge. Dkt. 16 at 10. Nothing in the Complaint states or suggests that Hill's dues dispute motivated any actions (or inactions) taken during the termination proceedings by IAMAW's representatives. In fact, Hill alleges that IAMAW told United that Hill "was an employee in good standing," during the IRM. Dkt. 16 at 18.

Hill's allegations may be "consistent with [IAMAW]'s liability, [but such facts] stop short of the line between possibility and plausibility of entitlement to relief, and thus are inadequate," to state a claim upon which relief may be granted. *Inclusive Cmtys.*, 920 F.3d at 899. Consequently, IAMAW's motion to dismiss under Rule 12(b)(6) (Dkt. 22) must be GRANTED.

B. Subject Matter Jurisdiction

As discussed above, the court has jurisdiction over Hill's breach of contract claim against United under the RLA only where Hill alleges a hybrid suit against both United and IAMAW. Because Hill has not alleged facts sufficient to support a claim for breach of the duty of fair representation against IAMAW, her claim against IAMAW is dismissed and the court lacks subject

matter jurisdiction over Hill's breach of contract claim against United. *See Trial*, 896 F.2d at 126 (holding the district court did not have jurisdiction over claims against employer because claims against the union were time-barred). Therefore, United's motion to dismiss under Rule 12(b)(1) (Dkt. 24) must be GRANTED.

### IV. CONCLUSION

United's and IAMAW's motions to dismiss Hill's Complaint (Dkts. 22, 24) are GRANTED.

Signed at Houston, Texas on September 19, 2019.

_____
Gray H. Miller
Senior United States District Judge